The People of the State of New York, Respondent,
*v.* Herbert Russell, Appellant.

(Argued November 26, 1934; decided December 31, 1934.)

*James D. C. Murray* and *Daniel Kirchman* for appellant. A prior conviction may be proved solely for the purpose of affecting the credibility of the witness and not, as stated by the trial court, for the purpose of " showing the temperament of the witness and what his inclinations and habits were, and the fact that he consorted with another individual at the time of the commission of this crime, and that he did not do it alone." (*People* v. *Molineux*, 168 N. Y. 264; *People* v. *Thau*, 219 N. Y. 39; *People* v. *Richardson*, 222 N. Y. 103; *People* v. *Thompson*, 212 N. Y. 249; *People* v. *Buffom*, 214 N. Y. 53; *People* v. *Zackowitz*, 254 N. Y. 192.) The trial court committed error in its charge to the jury upon the question of alibi. (*People* v. *Barbato*, 254 N. Y. 169; *People* v. *Hartnett*, 208 N. Y. Supp. 246; *People* v. *Allocca*, 170 N. Y. Supp. 881; *People* v. *Montlake*, 172 N. Y. Supp. 102; *People* v. *Stone*, 117 N. Y. 480; *State* v. *Ardoin*, 49 La. Ann. 1145; *Peyton* v. *State*, 54 Neb. 188; *Casey* v. *State*, 49 Neb. 403; *McCool* v. *United States*, 263 Fed. Rep. 55; *Graham* v. *State*, 153 Ala. 38; *Schultz* v. *Territory*, 5 Ariz. 239; *Haskins* v. *State*, 148 Ark. 351; *People* v. *Fong Ah Sing*, 64 Cal. 253; *State* v. *Brauneis*, 84 Conn. 222; *Adams* v. *State*, 28 Fla. 512; *People* v. *Ahrling*, 279 Ill. 70.)

*William Copeland Dodge, District Attorney (John C. McDermott* of counsel), for respondent. The weight of the testimony of a witness of a low and criminal character is affected by a disclosure of his past criminal life and particularly is this true when a defendant charged with felony murder in the commission of a robbery is shown to be one who, in the past, used guns and accomplices in the commission of another robbery. And the jury may and should give proper consideration and weight to evidence showing that the witness has committed crimes. (*Real* v. *People,* 42 N. Y. 270; *People* v. *Noelke,* 94 N. Y. 137.) The charge is to be considered as a whole and when so considered no error appears even if a detached portion when read by itself may have misled the jury. (*People* v. *Koenig,* 180 N. Y. 155; *People* v. *Johnson,* 185 N. Y. 219; *People* v. *Gilbert,* 199 N. Y. 10; *Stover* v. *People,* 56 N. Y. 315.)

LEHMAN, J. On March 7th, 1933, Martin L. Harris was killed in his apartment in Harlem. He was a colored man and, it appears, known in Harlem as the " policy king." At the time of the homicide, three persons were living in Harris' apartment and, in addition, a carpenter was working there. Their testimony establishes that three colored men entered the apartment and one of them held in his hands two revolvers. Harris was shot by that man. Then they escaped with a considerable sum of money. Two pistols used in the " hold-up " were found on the floor of the apartment after the robbers escaped.

In July, 1933, five men were indicted for the murder of Harris. Four of them had been previously apprehended. The fifth defendant is still at large. The four defendants who were apprehended were tried jointly. The jury convicted the defendant Russell of murder in the first degree. It acquitted the defendant Mowatt. It disagreed as to the other defendants on trial.

At the trial three witnesses who were present at the homicide positively identified defendant Russell as the man who entered the apartment of Harris with two guns in his hands and who shot Harris. They also identified the defendant Mavis as one of the participants in the robbery. The two other defendants on trial were concededly not present at the homicide. The People endeavored to prove their guilt by evidence of admissions that they had aided and abetted the felony, in which the others were engaged when Harris was shot. Russell was not present when these alleged admissions were made. Against him the only evidence is the identification by the three witnesses who saw the homicide.

Russell denied participation in the felony and that he was present at the homicide. From the moment of his arrest he claimed that at that time and for some weeks thereafter he was confined to his bed by an attack of rheumatism. He so testified at the trial. He produced a number of witnesses who corroborated this evidence on his part. If the jury believed the testimony of the three witnesses who were present at the time of the homicide and who identified him, it could not reasonably fail to bring in a verdict of guilty of murder in the first degree. If they believed the testimony that Russell was at the time confined to his bed, then the jury was bound to acquit. The issue was simple and on that issue the burden of proof beyond a reasonable doubt, of course, rested on the People.

Though the issue is simple, its resolution requires a careful scrutiny of the evidence on both sides. There may be no ground to believe that the People's witnesses intentionally testified falsely. There is, nevertheless, ground for doubt as to the correctness of their identification. It is not disputed that immediately after the homicide they were taken to police headquarters and there they picked out a photograph as the likeness of the man who had shot Harris. They were mistaken then.

The man whose likeness they picked out was in prison. Subsequently they picked out other photographs and again they were mistaken. Though these previous attempts at identification may be explained, yet they serve to impeach the testimony of these witnesses given at the trial. Even so, the jury might accept their testimony in spite of the denial by the defendant Russell and the testimony of his corroborating witnesses. Careful scrutiny of the evidence produced by both sides and appraisement of the probabilities were called for. In a case as close as this, circumstances which would ordinarily seem immaterial might become a decisive factor in the decision. Errors in the admission of evidence, or in the charge, which we might disregard where the People's proof points more conclusively to guilt, then may require a reversal of a judgment of conviction.

Since the defendant became a witness in his own behalf, the People had the undoubted right to impeach his credibility by proof of prior convictions. In this case they went further. They brought out on cross-examination not only that the defendant had been previously convicted of robbery in the second degree, but that at the time of the robbery of which he was convicted he had an accomplice and that a gun was used in the robbery. That evidence was admitted not upon the theory that it impeached the credibility of the defendant's testimony as a witness, but that it might tend to show inclinations and tendencies of the defendant which might impel him to commit the crime for which he was on trial. Indeed, the trial judge, in the presence of the jury, stated: " I think the District Attorney can ask him whether or not in connection with that previous robbery, there was also a gun used, as showing the temperament of the witness and what his inclinations and habits were, and the fact that he consorted with another individual at the time of the commission of this crime, and that he did not do it alone. He is charged here with going in with two others,

and having a lookout. The District Attorney may ask him whether or not there was any gun used in the commission of the previous robbery to which this witness pleaded guilty, and whether or not in that case he had an accomplice." We have said: " Inflexibly the law has set its face against the endeavor to fasten guilt upon him by proof of character or experience predisposing to an act of crime." (*People* v. *Zackowitz*, 254 N. Y. 192, 197.) The discussion in the opinion in that case leaves nothing further to be said on that point. This well-established rule has been disregarded here.

The trial judge charged the jury very carefully upon the issues presented by the evidence. Indeed, throughout the case the trial judge showed admirable care for the rights both of the People and the defendants. Nevertheless, in that part of the charge in which the jury was instructed as to the manner in which it should consider the defendant's attempt to establish an alibi, the trial judge fell into error which in our opinion cannot be disregarded as immaterial. Evidence by a defendant that at the time when it is charged that a crime was committed he was at some other place does not constitute an exculpatory defense upon which the defendant has the burden of proof. Rather, it is evidence which if believed shows that the defendant could not have participated in the crime as claimed by the People. Such evidence is at times fabricated and when given by witnesses who are interested or whose credibility is otherwise impeached, it should be carefully scrutinized. Testimony of a defendant in denial of the charge against him may be viewed with suspicion where a defendant has attempted to fortify his denial by evidence of his presence elsewhere which is shown by independent proof to be fabricated. None the less, it is the proven fabrication which in such case gives rise to the justified suspicion not the mere fact that defendant has attempted to fortify his denial by other evidence that he could not have committed the

crime.  The People always have the burden of establishing the commission of a crime.

In his charge the trial judge overlooked these fundamental considerations.  He charged: " It is obviously essential to the satisfactory proof of an alibi that it should cover the whole of the time of the transaction in question so as to render it impossible that the defendant should have committed the act.  It is not enough that it render their guilt improbable."  We have held to the contrary in *People* v. *Barbato* (254 N. Y. 170).

He charged further: " An unsuccessful attempt to establish an alibi is always a circumstance of great weight against the prisoner because the resort to that species of defense implies an admission of the truth and relevancy of the facts alleged and the correctness of the inference drawn from them, if they remain uncontradicted.  And where the defense of alibi fails, it is generally on the ground that the witnesses are disbelieved and the story considered to be a fabrication."

A charge may be a sufficient and even a substantially correct instruction even though it contains phrases which, isolated from their context, seem erroneous.  The test is always whether the jury, hearing the whole charge, would gather from its language the correct rules which should be applied in arriving at decision.  Here, in effect, the judge charged that the so-called " alibi defense " must be regarded with suspicion and even pointed out grounds for suspicion which do not exist in this case.  He told the jury further, in effect, that if it did not believe the testimony of the defendant's witnesses, it might consider the " defense of alibi " a fabrication and, therefore, corroboration of the People's witnesses and an admission by the defendant of the truth and relevancy of their testimony.  He thus placed upon the defendant a burden of proof which in law rests upon the People.

The People's witnesses have testified that the defendant Russell shot and killed Harris at a specified time and

place. The defendant's witnesses have testified that the defendant, at the time of the shooting, was at a different place. In weighing the testimony the jury was called upon to consider the possibility of mistake on the part of the People's witnesses and the possibility of fabrication on the part of the defendant's witnesses. There is no independent proof of fabrication. The jury could infer fabrication only if they found that the testimony of the People's witnesses, who were present at the time of the homicide and who identified the defendant, was true. Disbelief of the defendant's witnesses would be the inevitable result of belief of the People's witnesses. It could not, at the same time, be corroboration of the People's witnesses.

An honest defendant may fortify his denial of the charge against him by other evidence which, if accepted, would demonstrate the falsity of the charge, without thereby subjecting himself to the suspicion that his denial is false and the evidence produced by him fabricated, unless there is independent evidence of such fabrication. The burden of proof of guilt beyond a reasonable doubt may never be shifted from the People to the defendant. The presumption of innocence continues throughout the trial. The charge in this case has substantially deprived the defendant of this fundamental right.

The judgment of conviction should be reversed and a new trial ordered.

POUND, Ch. J., CRANE, O'BRIEN, HUBBS, CROUCH and LOUGHRAN, JJ., concur.

Judgment of conviction reversed, etc.